Under the authority of the case of *Tanner* v. *Trustees of Albion*, decided by the Supreme Court of this state while holding the relation of an appellate court to the New York Common Pleas, and before the two courts were placed upon an equality; a bowling alley, kept for playing for hire, must be held a nuisance at common law, although this court questions the correctness of that decision.

Hence, a contract letting premises for the very object of conducting a bowling alley, is void,

But letting premises with knowledge of facts from which the lessor may reasonably suppose an intention on the part of the lessee to keep a bowling alley, followed by the actual use of the premises for that purpose, within the observation of the lessor, is not of itself sufficient, unless the lessor is clearly proved a direct party to the illegal intent, and performs some act plainly in aid and furtherance thereof.

Accordingly, where the two owners of a house and lot, fitted up and used for many years as a bowling alley, and which had been occupied for that purpose by one of such owners in partnership with a third person, execute a lease, and one of the lessors unites with his said partner in selling to the lessee the bowling alley and other fixtures upon the premises, and the bowling alley is thereafter, with the knowledge of the lessors, used as such for him; it was *held*, that the finding of a referee sustaining the lease should not be reversed on appeal. Iɴɢʀᴀʜᴀᴍ, Fɪʀѕᴛ J., and Dᴀʟʏ, J., *concurring;* Wᴏᴏᴅʀᴜғғ, J., *dissenting.*

Authorities touching the immorality of the consideration as affecting a contract.

Tʜɪѕ cause came before the court upon the defendant's appeal from a judgment entered upon the report of Mr. Hᴏʀ-ᴛᴏɴ H. Bᴜʀʟᴏᴄᴋ, as sole referee, before whom the issue was tried. The pleadings and evidence are sufficiently set forth in the following opinion of the referee:

"The action is brought to recover the sum of two hundred and eleven dollars, and interest from the first day of August, 1844, on a lease bearing date the 21st day of January, 1843, between William G. Updike and Lewis J. Updike of the first part, and Herman Atwill and Thomas F. Campbell of

Updike v. Campbell.

the second part, for the premises number 6 Howard street, in the city of New York, for the term of five years and three months from the 1st day of February, 1843, at the yearly rent or sum of four hundred and seventy-five dollars, payable quarterly, saving and excepting the first quarter, which was to be only seventy-five dollars.

The complaint sets forth the lease, and states that on the 10th of March, 1843, the said William G. Updike, one of the lessors, transferred his interest in the lease to the plaintiff. The defendant, Atwill, sets up a surrender of the leased premises, and denies any knowledge sufficient to form a belief as to whether William G. Updike assigned his interest in the lease to the plaintiff, as set forth in the complaint, and he denies that there is due and owing to the plaintiff the balance of rent claimed in the complaint. The defendant, Campbell, in his answer, denies that there is due the balance claimed in the complaint, and sets up a distress of sufficient goods and chattels to pay the rent claimed; and that the premises were let and hired by the lessors to the defendants for an unlawful and illegal purpose, to wit, for the playing of a game called "ten pins," and also for the playing with cards and dice, and other sorts of gaming by lot or chance, within the same, which was also to be kept as a public place where liquors were to be sold, contrary to the Revised Statutes, and for the further purpose of wagers, bets and stakes, made to depend on gaming by lot or chance, contrary to the Revised Statutes; and that the said premises, during all the time they were so occupied by the said defendants, were actually, with the knowledge, consent and approbation of the plaintiff, so used as aforesaid. The plaintiff, in his reply, denies the distress, the letting for an unlawful and illegal purpose, or that the premises were afterwards used and occupied for such purposes with his consent.

The evidence in the case shows the execution of the lease, by the owners of the premises, William G. and Lewis J. Updike, and the assignment thereof to the plaintiff by William G. Updike; and that previous to the execution of the lease,

the said William G. Updike and one Heath kept a bowling saloon and bar on the premises, and sold out the fixtures to the defendants, who afterwards carried on the same business that Heath and William G. Updike did; and that after the defendants had commenced business there, the plaintiff had frequently been at the place and seen the defendant, Campbell, and the witness, Pye, play.

This is all the evidence before me; and it is contended, by the counsel for the defendant, Campbell, that this establishes the letting and hiring of the premises to be used for an unlawful and illegal purpose, or that the premises were afterwards used and occupied for such an unlawful and illegal purpose, by and with the consent and approbation of the plaintiff, as set forth in the answer of the defendant, Campbell. I think the evidence entirely fails to establish either a letting and hiring of the premises to be used for such unlawful and illegal purpose, or that the premises were so occupied and used by and with the plaintiff's consent and approbation.

The lease itself is entirely silent as to the purpose for which the premises was to be occupied; and the fact that one of the lessors, William G. Updike, had previously occupied the premises as and for a bowling saloon and bar, and the subsequent use of the premises for the same kind of business by the defendants, does not show that the premises were let and hired for that purpose; nor does the fact that the plaintiff saw playing there, after the defendants commenced business there, show that the plaintiff, in any way, assented to the defendants using the premises for any unlawful or immoral purpose.

After the defendants entered into possession, they had a right to occupy the premises in any manner they thought fit, and the plaintiff is in no way responsible for the unlawful business carried on there, if any there was; the plaintiff, then, had no control over the premises, and could not, in any way, interfere with the defendants as to the use they put them to.

The most that can be said to be established by the evidence before me, is, that the plaintiff probably knew the use the de-

Updike *v.* Campbell.

fendants intended to put the premises to; but this is not sufficient to deprive the plaintiff of the rent due under the lease. Bare knowledge of the intended use of the premises is not enough. The illegal and unlawful use of the premises must be stipulated for in the contract of letting and hiring, or the lessors must do some act in aid of the illegal and unlawful use of the premises besides the bare letting, or the rent stipulated for in the contract may be recovered. (1st Espinasse's Reports, 15; Nisi Prius Abridgt., 59 and 60; *Kneis* v. *Selligman*, 5th Howard's Pr. Rep. 425.) In the last case cited, SELDEN, J., held, that the purchase money for goods and merchandise could be recovered where the seller knew that they were intended to be used by the purchaser for an unlawful and illegal purpose, in violation of the excise law, where the sale was made in the ordinary course of trade, and the illegal design did not enter into and form part of the contract, and where no act was done by the seller in aid of such unlawful design beyond the bare sale. Such is the present case; the plaintiff has done no act, beyond the bare letting, in aid of the unlawful use of the premises, if it be conceded the evidence establishes such unlawful use of the premises, which is by no means clear. The plaintiff is consequently entitled to judgment against the defendants for the sum of three hundred and thirty dollars and thirty-nine cents, and the amount of rent and interest claimed, with the costs of this action.

The appeal was originally argued at a general term held by DALY and WOODRUFF, JJ., who in January term, 1854, delivered the following opinions:

DALY, J.—There can be no doubt of the equitable right of the plaintiff to recover the rent of the premises hired by the defendants, and which they have occupied. The defendants, however, contend that the premises were rented by the plaintiff for an illegal purpose, and that the contract therefor was void, and cannot be enforced.

There is no doubt of the rule of law as above stated, and if it appears from the evidence that such was the contract, then the plaintiff cannot recover.

There is nothing in the renting itself which warrants such a conclusion. The evidence shows that the plaintiff and one Heath kept a bowling saloon on the premises, previous to the leasing to the defendants, and that the plaintiff admitted that the defendants had bought him out. It also appeared that the plaintiff was on the premises afterwards, and saw persons playing there.

This was all the evidence relating to this point, and is, in my judgment, entirely insufficient to defeat the claim. It nowhere appears, that there was any understanding or knowledge, at the time of leasing, that the defendants were to use the premises for such purposes, and they were under no obligation to do so. Nor does it appear that the plaintiff sold out to the defendants before leasing, even if such was sufficient to warrant the presumption that the leasing was made with such an intent.

To apply the harsh rule of forfeiting all the rent, because the contract is illegal, the evidence should clearly establish such to be the case. It is not to be left to conjecture; no such intent can be fairly assumed as a fact upon this testimony. The referee has so found, and his report should be affirmed.

Woodruff, J.—The plaintiff herein, together with William G. Updike, executed a lease to the defendants for the house and lot number 6 Howard street, and this action is brought to recover the rent reserved in that lease. The premises, at the time of the execution of the lease, and for some years before that time, were used as a bowling saloon and bar room by one of the lessors and another person. The defendants purchased the fixtures and furniture from William G. Updike and his partner, and took the lease of the house and lot from William G. Updike and the plaintiff.

The plaintiff claims under the lease, both in his own right

and as assignee of William G. Updike, who transferred his interest in the lease to him.

Now it is obvious that the plaintiff, by purchasing the interest of William G. Updike, placed himself in no better position in this action than he and William G. Updike would have held had this action for rent been prosecuted by both. That is to say, if there was any invalidity in the lease which would have defeated an action brought by the lessors jointly, the same invalidity will defeat the present action, for the lease was in no sort a negotiable security.

Was the lease valid in the hands of the plaintiff and William G. Updike?

It is objected to its validity that the premises were let for an illegal purpose; i. e., to be used for the upholding and continuance of a nuisance.

The Supreme Court, in *Tanner* v. *The Trustees of Albion,* 5 Hill, 121, decided that a bowling alley kept for gain or hire is a public nuisance at common law. Although the judgment in that case was sought by counsel to be, and might perhaps be sustained upon other grounds, yet the only opinion given places the decision on the distinct ground above stated, and there is no reason to doubt that all the judges concurred in Justice COWEN's opinion. That case was decided in 1843, when the Supreme Court bore the relation to this of an appellate court, and we have heretofore regarded the decisions of that court, made before this court was placed on the footing of equality in this respect with that tribunal, as binding upon us. I do not, therefore, feel at liberty to regard the question as open for discussion here, though I am by no means satisfied of the correctness of that decision.

Regarding this decision as law for the purposes of this case, and a bowling alley kept for gain or hire as a nuisance, it follows that a lease of premises for the purposes of a bowling alley is void; (see *Girardy* v. *Richardson,* 1 Esp. 13, and cases cited in Story on Conts. § 542;) that is to say, provided the very object of the lease was to aid and assist in its maintenance.

The question then to be considered upon the evidence was, whether the lessors let the premises in question for the purposes of a bowling alley? i. e., to aid and assist in its maintenance.

The referee has found, as appears by his opinion, that they were not let for that purpose; and were the evidence conflicting, or the facts from which the purpose of the letting is to be inferred doubtful, I would not interfere with his conclusions. But the referee has arrived at his conclusions by a train of reasoning without giving to the facts proved the legal effect which, it seems to me, was due to them.

The premises were fitted up expressly for a bowling saloon and bar room, with the fixtures necessary for the business, and had for several years been used as such by one of the lessors for gain or hire.

He sold the fixtures to the defendants, and he and the plaintiff leased to them the house and lot whereon these fixtures then were, and the defendants then entered and continued the same business.

To my mind the sale of the fixtures to the tenant and the giving of the lease, show conclusively that the very purpose and object of the lease was to furnish a place for the continuance of the business, and to aid and further the only purpose for which the purchase of the fixtures could have been made. Such is, I think, the legal inference, as it is unquestionably the actual consequence of the sale and lease.

It was urged that the tenant was not bound to continue the business; that there was no stipulation to that effect in the lease; that he could have appropriated the premises to any other use, and the lessors could not control him. That is very true, but the sale of the fixtures shows that the lessors not only knew of the defendant's purpose, but that that purpose was sanctioned and furthered by the taking of his money for the fixtures, and to that extent placing him under a motive to continue the business, and aiding him in it by giving him the facilities which were not useful to him for any other purpose.

This same reasoning would be no less applicable to a lease

of a house for the purposes of prostitution. The lease may not express the use to which the house is to be applied, and yet if that use enter into the consideration of the parties, so as to form a motive to the letting, the lease is void.

I cannot resist the conclusion, that here the lease was given with the motive; and that the actual furnishing the implements and means of employing the premises in that manner are as conclusive on this subject as a lease of a house ready furnished and fitted up with all the trappings and appliances peculiar to a brothel (if there are any peculiarities in the fitting up of such houses) would be.

My conclusion is, that the judgment should be reversed.

A re-argument before the full bench having been ordered,

*Anthony R. Dyett,* for the defendant, made and argued the following points :

I. The evidence clearly establishes a letting and hiring of the premises for an unlawful and illegal purpose, and that they were so used and occupied with the lessor's consent. A bowling saloon is a nuisance, and therefore unlawful. (*Tanner* v. *Trustees of Albion,* 5 Hill, 121.)

II. The courts have never gone further than to decide that a bare knowledge of the intended unlawful purpose, without any act in aid of it, is not enough, where no proof is given that the purpose was carried out; to this effect are the cases relied on by the referee. They have decided the other way in cases where such proof is given, which is the present case. Besides, in this case the act of letting was in furtherance of an unlawful purpose. (See point one; see, also, the cases referred to in *Kneiss* v. *Seligman,* cited in referee's opinion; *Jennings* v. *Throgmorton,* R. & M. 251; *Girardy* v. *Richardson,* 1 Esp. 12; *Appleton* v. *Campbell,* 2 C. & P. 347.)

And it makes no difference that the lease is silent as to the use to be made of the premises. The fact may be proved by

parol, notwithstanding. (Chitty on Contracts, 6 Am. ed. pp. 113, 653.)

The counsel for the defendant cited the following additional authorities: Under first point, as to presumptions, Mat. Pres. Ev. 3; 2 Saund. P. & E. 673; Starkie Ev. 24, 28, 29.

Under second point, (landlord's participation,) *Rex* v. *Pedley*, 1 Ad. & E. 822; *Roswell* v. *Prior*, 2 Salk. 460; 12 Md. 635; *Mayor of New York* v. *Bailey*, 2 Denio, 445; *Waggoner* v. *Jermaine*, 3 Denio, 306; *Brown* v. *Woodworth*, 5 Barb. 551; and see *Jackson* v. *Walker*, 5 Hill, 27.

*Benjamin M. Stillwell, S. E. Swain* and *John B. Scoles*, for the plaintiff, made and argued the following points:

*First.* The question, whether the evidence established a letting of the premises for an unlawful purpose, or that they were so occupied with the consent of the lessors, or either of them, was a question of fact in the cause, upon which the referee has passed, and his report will be held conclusive. (*Shuart* v. *Taylor*, 7 How. 253; *Durkee* v. *Mott*, 8 Barb. 423, 425, and cases referred to in note.)

*Second.* There is no error in the conclusions, either of law or fact, arrived at by the referee.

*Third.* There is no evidence that the plaintiff, before the letting of the premises, knew that the defendants purposed to apply the premises to the particular use which they did. The plaintiff was not responsible for the mode in which the tenant thought fit to occupy them. He will not be permitted to set up his own wrong as a defence to the claim of rent. It is only where both parties are ·in *pari delictu*, in consequence of a contract between them, *contra bonos mores*, that the landlord cannot recover rent. This is not the present case. (*Kneiss* v. *Seligman*, 5 How. 425; *Bowry* v. *Bennett*, 1 Camp. 348; *Lloyd* v. *Johnson*, 1 Bos. & Pull. 340.)

*Fourth.* There was nothing unlawful in the business conducted upon the premises by the defendants.

The following authorities were also cited on the argument: (1 Selwyn N. P. 68; 1 Esp. 13; 5 Cow. 253; 2 Wils.

339; 3 Hill, 170; 5 Vesey, 291; 3 Mees. & Wels. 434; 2 Burrows, 1,081.)

INGRAHAM, FIRST J.—Upon the former argument of this case, before two of the judges, they both agreed, that under the decision of the Supreme Court, in *Tanner* v. *The Trustees of Albion*, 5 Hill, 121, it must be considered as settled, so far as to control this court, that a bowling alley kept for gain is a nuisance, and that a lease of premises for the purpose of furthering the keeping of such an establishment, with the knowledge of the lessor, is void. It is, therefore, unnecessary, as my brethren are agreed on this point, to examine it at the present time. I refer to their opinions heretofore delivered, as containing the views of the court on this part of the case.

The question upon which a difference of opinion was entertained, and which has been re-argued at the present time is, whether the lessor let the premises in question for the illegal purpose of keeping such an establishment, so as to aid or assist in its maintenance.

The referee has found against the defendant, and the judgment can only be reversed upon the ground that such finding is against the evidence.

The defence, as set up in the answer, is, that the plaintiffs let the premises with their knowledge and approbation, that the same were to be used for an illegal purpose, specifying the offences of playing, gaming, &c., as prohibited in the Revised Statutes.

The evidence established that the plaintiff kept the premises previous to the letting for a public house and bowling saloon. That the witness kept the premises for the same purpose, and sold out previously to the plaintiff, and that the plaintiff said the defendant bought Heath & Updike out. The witness did not know from whom the fixtures and furniture of the saloon were purchased. It also appeared that the defendants made material alterations in the bowling alley.

Upon this evidence the referee found that it failed to

establish a letting and hiring of the premises to be used for such illegal purpose, or that they were so occupied and used with the plaintiff's consent and approbation.

There is in this case nothing which shows, that using the premises for the purpose of gaming, whether at bowling or in any other manner, formed a part of the contract of leasing, or that the plaintiff did any thing in aid or furtherance of the use of the building for such a purpose; and the question then arises, whether letting premises with the knowledge of facts, from which the lessor might reasonably suppose that the lessee would use the premises for such purpose, is sufficient to vitiate the contract of leasing.

The case of *Kneiss* v. *Seligman*, 5 How. Pr. R. 425, decides that such knowledge does not affect the contract for the sale of goods which the vendor knew were to be used by the purchaser for an unlawful purpose, unless the vendor does some act beyond the mere sale, in aid or furtherance of the unlawful object. In that case, Justice SELDEN says, "it is not established, and will never become the settled law, that bare knowledge on the part of the vendor that the vendee intends to put the goods to an illegal use, which intention may or may not be followed up, will vitiate the sale and deprive the party of all remedy for the purchase money." The doctrine does not reach this case, because the illegal design does not enter into or form any part of the plaintiff's contract, nor has he done any thing to its accomplishment.

In *Bowry* v. *Bennett*, 1 Camp. 348, where an action was brought to recover for clothes sold to a prostitute, and the defence was that the articles were sold for the purpose of enabling her to carry on her business of prostitution, Lord Ellenborough said it must not only be shown that the plaintiff had notice of the defendant's way of life, but that he sold the clothes to enable her to carry it on.

In *Farringer* v. *McBurney*, 5 Cowen, 253, which was for the board of a female who had been living with the defendant, and had by him an illegitimate child, and the defence was that the contract was made with the view of facilitating

the continuance of the state of prostitution between the defendant and the female boarded, the court say, "The simple circumstance that the plaintiff had knowledge of the previous cohabitations did not furnish legal ground for an intent to sanction their repetition; something more was necessary."

So in *Gray* v. *Matthias*, 5 Wend. 291, a bond given during cohabitation to a woman was held to be unimpeached, although the parties continued such cohabitation afterwards, while a second bond, given to secure a continuance of the cohabitation, was held to be void. In referring to that case, Mr. Justice WOODWORTH says, the test is, "Does it appear by the contract itself, or was there any understanding between the parties, though not expressed, that the connection was to continue?"

In *Tolen* v. *Armstrong*, 11 Wheat. 258, it was held that "the promise, unconnected with the illegal act, was not tainted, although such illegal act was known to the party to whom the promise was made, and he was the original contriver of it."

In *De Groot* v. *Vanduser*, 20 Wend. 390, the demurrer admitted the allegation in the plea that the act was done for the purpose of aiding the carrying on of the illegal business therein mentioned, and does not rest on the mere fact of knowledge.

In *Jackson* v. *Walker*, 5 Hill, 27, which was on an agreement to pay money to keep open the log cabin in Broadway, contrary to the law relative to elections, it was made a part of the agreement that the building should be used for the prosecution of the success of a political party, and it was held to be void for that reason; and even with that clause in the agreement, the judgment was affirmed in the Court of Errors only by a tie vote. (7 Hill, 387.)

In *Gibson* v. *Pearsall*, 1 E. D. Smith, 90, this court held that a lease was not void under the laws prohibiting gaming, unless the lessor, at the time of making the agreement, was a party to the illegal intent, and let the premises in furtherance thereof.

From these cases, I think the general deduction must be, that mere knowledge that the lessee would use the premises in violation of the statute, is not sufficient to avoid the lease, unless the lessor was a party to such intent, and did some act in aid and furtherance of the intended violation of the law.

The evidence in this case does not establish any such act on the part of the lessor so clearly that we are called upon to reverse his finding as against the clear weight of evidence. On the contrary, the reasonable conclusion is, that the tenant was at liberty to follow his own conclusions as to the use to which he would put the premises after he had taken them, and he was under no obligations so to use them, nor did the lessor do any thing to aid in such use.

The judgment appealed from should be affirmed.

DALY, J., concurred.

Judgment affirmed.